Josh A. Cohen (SBN 217853)
Shaneeda Jaffer (SBN 253449)
CLARENCE DYER & COHEN LLP
899 Ellis Street
San Francisco, CA 94109
Tel: (415) 749-1800
Fax: (415) 749-1694
jcohen@clarencedyer.com
sjaffer@clarencedyer.com

Attorneys for Defendant
MONTE WEDL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR-17-0128 EMC |
| Plaintiff, | **DEFENDANT MONTE WEDL'S RESPONSE TO GOVERNMENT'S SUPPLEMENTAL BRIEF ON VOLUNTARY INTOXICATION** |
| v. | |
| MONTE MICHAEL WEDL, | |
| Defendant. | |

**INTRODUCTION**

On May 24, 2017, the government filed a "Supplemental Brief on Voluntary Intoxication." By way of this pleading – which is not itself a motion and which does not actually "supplement" any motion or request the government has previously made – the government seeks to preclude Mr. Wedl "from raising any unconsciousness or temporary insanity defense as a means of negating general intent encompassed in all the charges." Dkt. No. 59, at 7.

The government's arguments are misguided. To the extent the government seeks any relief that can be granted, the Court should decline to grant it.

///

**BACKGROUND**

Mr. Wedl expects that there will be testimony at trial that he was under the influence of Ambien during the flight at issue. There will also be testimony that Mr. Wedl consumed alcohol during the flight.

On April 20, 2017, Mr. Wedl provided notice to the government of his intent to call Kenton Wong to testify about the effects of Ambien. As set forth in the notice, Mr. Wong will testify that "zolpidem [Ambien] may cause a person to engage in activities in a quasi-sleep state, such that the person is not conscious of what he or she is doing." Mr. Wong will further testify that when zolpidem and alcohol are combined, "the two substances . . . magnify their individual central nervous depressant effects and can make it more likely that a person will engage in activities while in a quasi-sleep state."

On May 2, 2017, the parties submitted joint proposed jury instructions. With minor exceptions, the parties agreed on the elements of the charged offenses. The parties further agreed that the Court should instruct the jury on voluntary intoxication, assuming there is evidence in the record to support the instruction.

On May 22, 2017, the eve of the pretrial conference, the government filed a motion to exclude Mr. Wong as an expert. Although the government objected to Mr. Wong's qualifications and the materials underlying his opinions, the government did not contend in the motion that there was anything legally objectionable about the noticed opinions themselves.

On May 23, 2017, at the pretrial conference, the government argued for the first time that Mr. Wong's proffered opinions suggest a "lack of capacity" on the part of Mr. Wedl, and that Mr. Wedl cannot assert a "lack-of-capacity defense" because he was voluntarily intoxicated at the time the alleged crimes were committed.

The government's "supplemental brief" attempts to expound on the government's new position. For the reasons set forth herein, the government's arguments are misplaced.

///

///

**ARGUMENT**

The government advances two arguments in support of its thesis that Mr. Wedl's defense should be limited. First, the government contends that under federal law, the fact that a person is unconscious at the time of a charged offense is relevant only insofar as it may negate specific intent. The government makes this argument by *ipse dixit*, asserting in conclusory fashion that "[a] defendant's unconsciousness defense is treated in the same vein as diminished capacity or voluntary intoxication." Dkt. No. 59, at 2. To hear the government tell it, federal law allows even a comatose person to be convicted of a general-intent crime.

This is incorrect. "No crime without volition is the foundational axiom of our criminal law." *United States v. Quintana-Torres*, 235 F.3d 1197, 1199 (9th Cir. 2000). To convict a defendant of a general-intent crime, the government must prove beyond a reasonable doubt that the defendant was aware of his actions and performed them voluntarily. *See id.* (holding that "the voluntariness of the return [to the United States after deportation] is an element of the crime and, as such, must be proved beyond a reasonable doubt by the prosecution"); *accord* Ninth Cir. Model Crim. Instr. 5.6 (defining "knowingly" to mean that a defendant "was aware of the act"). It follows that "[e]ven in a crime requiring no specific intent, a defendant may defend upon the ground that he did no voluntary act; that he was asleep or unconscious at the time an act occurred." *Pena-Cabanillas v. United States*, 394 F.2d 785, 788 n.2 (9th Cir. 1968), *abrogated on other grounds, United States v. Smith-Baltiher*, 424 F.3d 913, 920 (9th Cir. 2005). It would reduce the government's burden of proof below the constitutional minimum to preclude a jury from considering unconsciousness in deciding whether the government has proved this element of an offense. *See id.* at 790 ("Obviously if appellant was drugged and carried across the [border], he would not be guilty of the offense, although nevertheless subject to deportation."); *United States v. Williams*, 403 F.3d 1188, 1197 (10th Cir. 2005) (holding that jury in § 922(g) case could properly consider whether "intoxication to the point of unconsciousness would make it impossible for Williams to act knowingly").

The cases the government cites do not hold otherwise. The question in *United States v. Martinez-Martinez*, 369 F.3d 1076 (9th Cir. 2004), was whether an alcoholic "blackout" (described by defendant's expert as an "amnesia," and distinguished by the expert from unconsciousness) negates intent *per se*, or whether it is merely one factor the jury can consider in determining whether intent has been proven. *Id.* at 1083. In *Martinez-Martinez*, the defendant "admitted to committing the acts underlying the crime of attempted entry after deportation"; his defense was not that he lacked consciousness, but that he was "incapable of comprehending the ramifications of his actions." *Id.* Accordingly, the *Martinez-Martinez* court had no occasion to consider, and certainly did not hold, that someone who acts unconsciously can be convicted of a federal crime.

The Ninth Circuit's analysis in *United States v. Twine*, 853 F.2d 676 (9th Cir. 1988), is even more attenuated. In *Twine*, the defendant asserted a diminished-capacity defense to charges of transmitting threats in interstate commerce based on a doctor's opinion that he suffered from "a schizoaffective disorder that manifested itself in depression, hyperactivity, obsession, and paranoia." *Id.* at 677-78. As in *Martinez-Martinez*, there was no question that the defendant consciously made the threats; the issue was whether he was capable of formulating the requisite specific intent. *Id.* at 677. In the course of holding that the charged threat-making offenses required specific intent, the court observed in passing that "diminished capacity, like voluntary intoxication, generally is only a defense when specific intent is at issue." *Id.* at 679. But the *Twine* opinion is completely silent on the issue of unconsciousness, and it draws none of the parallels between unconsciousness and diminished capacity (or voluntary intoxication) that the government presents as though they are settled law.

In short, there is no support in federal law for the government's position that the legal effect of unconsciousness is merely to negate specific intent.

The government's second argument is that, under California state law, a defendant is not entitled to the unconsciousness instruction set forth at CALCRIM 3425 if he induced the unconsciousness through voluntary intoxication.[1]  This argument tilts at windmills.  State law does not govern this action, and Mr. Wedl has not requested an unconsciousness instruction of the sort that is available in state court.

Yet assuming for the sake of argument that an unconsciousness instruction were at issue in this case, Mr. Wedl would be entitled to the instruction.[2]  Read carefully, the government's brief concedes between the lines that proper use of prescription medication is not the sort of "volitional conduct" that nullifies an unconsciousness defense.  Dkt. No. 59, at 2.  Indeed, the cases cited by the government hold as a matter of state law that unconsciousness is a complete defense when caused by "voluntary ingestion of prescription medication if the person did not know or have reason to anticipate the drug's intoxicating effects."  *United States v. Mathson*, 210 Cal. App. 4th 1297, 1313 (2012).

---

[1] The jury instruction at CALRCIM 3425 all but directs acquittal where the defendant was "legally unconscious."  It reads:

> The defendant is not guilty of  *<insert crime[s]>*  if (he/she) acted while legally unconscious.  Someone is legally unconscious when he or she is not conscious of his or her actions.  [Someone may be unconscious even though able to move.]
>
> Unconsciousness may be caused by (a blackout[,]/ [or] an epileptic seizure[,]/ [or] involuntary intoxication[,]/ [or] sleepwalking[,]/ or *<insert a similar condition>*).
>
> The People must prove beyond a reasonable doubt that the defendant was conscious when (he/she) acted.  If there is proof beyond a reasonable doubt that the defendant acted as if (he/she) were conscious, you should conclude that (he/she) was conscious.  If, however, based on all the evidence, you have reasonable doubt that (he/she) was conscious, you must find (him/her) not guilty.

[2] Notably, under state law, "[t]o constitute a defense, unconsciousness need not rise to the level of a coma or inability to walk or perform manual movements; it can exist 'where the subject physically acts but is not, at the time, conscious of acting.'" *People v. Halvorsen*, 42 Cal. 4th 379, 417 (2007) (citation omitted).

For this reason, the government chooses to characterize Mr. Wedl's conduct as "the knowing *mis*use of Ambien." Dkt. No. 59, at 7 (emphasis added). By taking Ambien *at the same time he drank alcohol*, suggests the government, Mr. Wedl intoxicated himself voluntarily and thereby disqualified himself from receiving the CALCRIM 3425 instruction.

Again, it is of little moment whether Mr. Wedl is eligible under state law for a state-court instruction he has not requested in this federal case. That said, the government's characterization of Mr. Wedl's conduct takes for granted what the government has not proved, *viz.*, that Ambien and alcohol are "contraindicated" (to use the government's term); that taking two "contraindicated" but lawful substances constitutes "misuse"; that Mr. Wedl knew the substances were "contraindicated" and knowingly "misused" them by combining them anyway; and, most importantly, that Mr. Wedl knew or had reason to anticipate that Ambien could cause him to behave in the manner alleged while in a quasi-sleep state. Unless the government established these premises in a hypothetical state-court trial, Mr. Wedl would be entitled to the CALCRIM 3425 unconsciousness instruction.

In sum, the government is wrong to equate unconsciousness with diminished capacity or voluntary intoxication under federal law; wrong to contend that one who ingests Ambien is necessarily ineligible for an unconsciousness instruction under state law; and wrong to suggest on the basis of these arguments that the jury in Mr. Wedl's case cannot consider the effects of the medication he took in deciding whether the government has proven its case. The Court should decline the government's request to preclude or limit Mr. Wedl's defense.

DATED:  May 26, 2017            Respectfully submitted,

                                CLARENCE DYER & COHEN LLP


                                By  ____/s/_____
                                    JOSH A. COHEN
                                    SHANEEDA JAFFER
                                    *Attorneys for Defendant Monte Wedl*