UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MONTE MICHAEL WEDL,<br><br>Defendant. | Case No. 17-cr-00128-EMC-1<br><br>**ORDER RE INTOXICATION DEFENSE AND DEFENSE EXPERT KENTON WONG**<br><br>Docket Nos. 57-58 |

A.  Intoxication Defenses

As noted in the Court's final pretrial conference order, Docket No. 67, the parties disagree about the scope of Mr. Wedl's proposed defenses. In particular, while the parties agree that the defense of voluntary intoxication is only available as to Count One, which includes a specific intent element, Mr. Wedl has indicated that he intends to argue that he suffered from "diminished capacity" or "unconsciousness" as the result of his taking prescription zolpidem (commonly referred to as "Ambien") in conjunction with alcohol, and that this condition may negate the general intent required under all three Counts. The Court requested additional briefing on this question, which the parties have submitted. *See* Docket Nos. 59 (Government Br.) and 65 (Wedl Br.).

Having reviewed the parties' papers, the Court concludes that a defense based on Mr. Wedl's consumption of alcohol *and* Ambien is relevant to a voluntary intoxication defense, and such defense will pertain only to the specific intent component of Count One. To the extent Mr. Wedl contends that he was rendered "unconscious" by the Ambien, and thus unable to form even *general* intent (which affects Counts Two and Three), he is, in effect, asserting an *involuntary* intoxication defense. Because an alleged unconsciousness is due to intoxication and not, *e.g.*, a

mental defect, organic brain disease, etc., the doctrine of involuntary intoxication provides the appropriate framework.

The common law has long recognized a defense of involuntary intoxication from prescription drugs.[1] *Johnson v. Com.*, 115 S.E. 673, 676–77 (Va. 1923); Jerome Hall, *Intoxication and Criminal Responsibility*, 57 Harv. L. Rev. 1045, 1055 (1944). This defense has, however, been extremely limited. For example, courts have consistently held that the defense is unavailable where a defendant was on notice of a drug's potentially intoxicating effects, whether from a label disclosure or from a physician's advice. *See Bingham v. State*, No. 49A04-0808-CR-504, 2009 WL 567191, at *2 (Ind. Ct. App. Mar. 4, 2009); *City of Minneapolis v. Altimus*, 238 N.W.2d 851, 856–57 (Minn. 1976); *Perkins v. United States*, 228 F. 408, 417–18 (4th Cir. 1915). In determining whether a defendant was on notice, the proper inquiry is whether the defendant knew *or had reason to know* of the potentially intoxicating effects of the drug. *See, e.g.*, *People v. Mathson*, 210 Cal. App. 4th 1297, 1327 (2012); *Com. v. Wallace*, 14 Mass. App. Ct. 358, 365 (1982). The Court will reserve judgment on this issue until trial, but will note that given the public warnings about the potential side effects of Ambien as well as warnings against consuming alcohol with Ambien, as evident in documents appended to Mr. Wong's report, Mr. Wedl faces a substantial challenge on this point.

The defense is also unavailable where the defendant consumed other intoxicating drugs or alcohol along with the prescription, and the other intoxicants contributed in any way to his impairment. *People v. McMillen*, 961 N.E.2d 400, 405 (Ill. App. Ct. 2011); *cf. United States v. Burnim*, 576 F.2d 236, 237 (9th Cir. 1978) (rejecting a lack of capacity defense where the defendant suffered from an organic brain defect, but also voluntarily ingested alcohol prior to committing robbery). In *McMillen*, a defendant charged with murder argued that he was involuntarily intoxicated by side-effects caused by his prescription medication when consumed at

---

[1] While federal courts may not, of course, recognize common law crimes, *see United States v. Hudson & Goodwin*, 11 U.S. 32 (1812), federal courts have long looked to the common law in crafting affirmative defenses to federal crimes. *See, e.g.*, *Brown v. United States*, 256 U.S. 335, 343 (1921) (self-defense); *see generally*, Richard H. Fallon et al.*, The Federal Courts and the Federal System* 613 (6th ed. 2009).

2

the same time as crack cocaine. The court held that "the knowing, or voluntary, ingestion of cocaine or other illegal drugs precludes the use of the involuntary intoxication defense" as a matter of law. *McMillen*, 961 N.E. at 405. In *Commonwealth v. Bishop*, a defendant charged with driving under the influence claimed that she was involuntarily intoxicated by an unanticipated interaction between alcohol and prescription medication. The court held in such cases, the jury should be instructed that "the defendant is entitled to an acquittal if her intoxication was caused *solely* by her prescription medication, taken as prescribed, and she did not know or have 'reason to know of the possible effects of the drug on [her] driving abilities.'" *Com. v. Bishop*, 78 Mass. App. Ct. 70, 75 (2010) (emphasis in original) (quoting *Com. v. Wallace*, 14 Mass. App. Ct. 358, 365 (1982)); *see also Com. v. Stathopoulos*, 401 Mass. 453, 457 (1988) (holding that where a defendant is under the influence of alcohol and other substances, "in order to find guilt, the jury need only to find that the liquor contributed to the defendant's impairment"). Thus, if Mr. Wedl's voluntary conduct in consuming alcohol contributed to his alleged unconscious state, his defense is limited to voluntary intoxication.

Mr. Wedl's argument to the contrary that any intoxication can be severe enough to render the defendant unconscious negates even general intent, relies primarily on a single Tenth Circuit case in which the court approved a jury instruction for a general intent crime that stated, in part, that "intoxication to the point of unconsciousness would make it impossible for Williams to act knowingly." *United States v. Williams*, 403 F.3d 1188, 1197 (10th Cir. 2005). Mr. Wedl argues that *Williams* stands for the proposition that the Court must permit the jury to consider evidence that he was in a quasi-sleep state in determining whether he was capable of forming the general intent necessary under Counts Two and Three regardless of notice or misuse of Ambien and alcohol. Mr. Wedl reads the case too broadly. The court in *Williams* had no occasion to decide whether the defendant was entitled to the instruction at issue, as the question of whether voluntary intoxication to the point of unconsciousness may negate general intent was not before it. To the contrary, *Williams* involved an appeal *by the defendant* who argued that the trial court's instruction improperly relieved the government of proving the element of "knowing possession" of a firearm when it "equated a 'knowing act' to one being conscious, and being incapable of

3

acting knowingly if they are unconscious." *Id.* Thus, the court did not decide the issue at hand; indeed, it reiterated that voluntary intoxication is *not* a defense to a general intent crime. The Court rejects Mr. Wedl's invitation essentially to eviscerate the distinction between the voluntary and involuntary intoxication and the distinction between several and specific intent in the application of the voluntary intoxication defense.

Accordingly, to assert a defense of "unconsciousness" resulting from Ambien, as distinct from voluntary intoxication, Mr. Wedl will have to establish not only that he took Ambien,[2] but also that he was not on notice of any potentially intoxicating effects of Ambien and that any alcohol he consumed did not contribute in any way to his impairment. If warranted by the evidence, the Court may give a jury instruction on the involuntary intoxication defense.

B. <u>Motion to Exclude Defense Expert</u>

Also pending before the Court is the government's motion to exclude the testimony of Mr. Wedl's proposed expert witness, Mr. Kenton Wong. Docket No. 57. Wedl has stated that Mr. Wong will testify about the effects of Ambien, including that it may "cause a person to engage in activities in a quasi-sleep state." Docket No. 57 Ex. 1. Mr. Wong will also testify that alcohol may increase the likelihood that Ambien will induce such a state. *Id.*

The Court may admit expert testimony if "**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; **(b)** the testimony is based on sufficient facts or data; **(c)** the testimony is the product of reliable principles and methods; and **(d)** the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see generally Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The government argues that Mr. Wong's testimony is inadmissible under this standard because, as a toxicologist, Mr. Wong's expertise is limited to "how a drug is processed by the body on a cellular level, for example, which enzymes process the drug, what receptors the drug acts upon, and how the body processes and clears the drug." Docket No. 57 at 3. This limited issue, according to the government, "cannot assist the trier of fact in determining

---

[2] The Court notes Mr. Wedl will have to establish this point with admissible evidence. Hearsay testimony by Mr. Wong will not suffice.

4

any of the factual issues that directly relate to the defendant's actions in this case." *Id.* at 5. Because Mr. Wong is not a doctor, and cannot himself prescribe drugs to patients, the government contends that he is unqualified to testify as to the behavioral effects of such drugs.

The government construes Mr. Wong's expertise too narrowly. Toxicologists frequently testify regarding the behavioral effects of drugs, including prescriptions such as Ambien. *See, e.g.*, *Plascencia v. Alameida*, 467 F.3d 1190, 1203 (9th Cir. 2006); *Grotemeyer v. Hickman*, 393 F.3d 871, 875 (9th Cir. 2004). Moreover, the fact that much of Mr. Wong's experience concerns "crime scene reconstruction, firearm and ballistics analysis, and bloodstain pattern analysis," Docket No. 57 at 3, is not dispositive. The government does not dispute that Mr. Wong is trained as a toxicologist indeed, the government acknowledges that Mr. Wong has testified as to the interaction of alcohol and prescription drugs. *Id.* at 4. Mr. Wong has also submitted documents from the manufacturer of Ambien, as well as from the Food and Drug Administration, that form the basis for his opinion on the side-effects of the drug and its interactions with alcohol. He has sufficient expertise in toxicology and an adequate basis to render an opinion about the potential side effects of Ambien and alcohol. This opinion is directly relevant to the issues in this case, and may assist the trier of fact accordingly.

For these reasons, the Court concludes that Mr. Wong is a qualified expert under Federal Rule of Evidence 702, and therefore **DENIES** the government's motion to exclude his testimony. For the reasons explained above, however, Mr. Wong's testimony may be limited to the issue of Wedl's specific intent as to Count One. Because the Court denies the government's motion, Wedl's motion to strike the motion is moot.

This order disposes of Docket Nos. 57 and 58.

**IT IS SO ORDERED**.

Dated: June 1, 2017

_____
EDWARD M. CHEN
United States District Judge